IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01927-LTB

KHALED ABOELEYOUN, and
ABDIKARIN AHMED,

      Plaintiffs,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,
ROB MATHER, District Director, Denver District Office, United States Citizenship and Immigration Service, and
FEDERAL BUREAU OF INVESTIGATION,

      Defendants.
_____

# ORDER
_____

This immigration case is before me on Defendants' Motion to Dismiss [**Docket #5**], Plaintiffs' Response [**Docket # 7**], and Defendants' Reply [**Docket # 8**]. Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I DENY Defendants' Motion to Dismiss [**Docket #5**].

## I. BACKGROUND

The following facts do not appear to be disputed. Plaintiff Khaled Aboeleyoun is a citizen of Egypt who has been granted lawful permanent resident status in the United States. On June 18, 2004, he filed an application for naturalization with United States Citizenship and Immigration Services ("USCIS"). On June 30, 2004, USCIS made a request to the Federal Bureau of Investigation ("FBI") for a "name check" background investigation of Aboeleyoun.

On October 22, 2004, Aboeleyoun was interviewed by USCIS is conjunction with his application. The FBI background investigation has yet to be completed.

Plaintiff Abdikarin Ahmed is a citizen of Somalia who also has been granted lawful permanent residency status. On August 11, 2005, he filed an application for naturalization with USCIS. On August 25, 2005, USCIS made a request to the FBI for a "name check" background investigation on Ahmed. On December 9, 2005, Ahmed was interviewed by USCIS in conjunction with his application. The FBI background investigation has yet to be completed.

## II. ANALYSIS

Plaintiffs filed their complaint on September 12, 2007, complaining of the agencies' failure to complete the naturalization process. Plaintiffs request "that this Honorable Court exercise its statutory jurisdiction over the Plaintiffs' naturalization applications, conduct a hearing to determine the matter, and conduct an expedited judicial oath administration ceremony. In the alternative, Plaintiffs respectfully request that this Honorable Court compel Defendants and those acting under them to complete any and all security checks and clearances required and complete the adjudication of Plaintiffs' Applications for Naturalization."

Plaintiffs seek relief under three possible statutes: (1) 8 U.S.C. § 1447(b), a provision in the Immigration and Nationality Act; (2) the mandamus statute, 28 U.S.C. § 1361; and (3) the Administrative Procedure Act, 5 U .S.C. § 701 *et seq*. Defendants seek the dismissal of Plaintiffs' Complaint on the basis that none of the grounds relied on by Plaintiffs provide jurisdiction to review this matter. Alternatively, Defendants also ask the Court to remand the case to USCIS for further proceedings.

I start with whether the Court has subject matter jurisdiction pursuant to 8 U.S.C. §

1447(b). Section 1447(b) provides: "If there is a failure to make a determination under section 1446 [a section addressing pre-naturalization investigations and examinations] of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

The first question presented is whether Plaintiffs' initial interviews by USCIS qualify as "examinations" for purposes of Section 1447(b) such that—since both occurred well over 120 days ago—this Court has jurisdiction over the matter. Defendants argue that Plaintiffs may not seek intervention from this Court until the entire investigative process that is triggered by Plaintiffs' applications for naturalization—including background checks and any required follow-up investigation—is completed. Defendants claim—since the investigative process with respect to Plaintiffs' applications has not yet been completed despite the passage of several years since they were first interviewed by USCIS—the 120-day time period set forth in Section 1447(b) has not yet begun to run. I disagree.

The first step of statutory construction is to determine whether the statutory language at issue has a plain and unambiguous meaning. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Section 1447(b) plainly refers to "the *date* on which the examination is conducted" as the event which triggers the 120-day time period for determination by USCIS. Defendants' interpretation of this language as encompassing a process extending over a period of time as opposed to a single date is at odds with this plain language. Defendants' interpretation of this

3

language is also at odds with the agency regulations that were promulgated to give effect to Section 1447(b) and related statutory provisions. The regulations refer to an "initial examination" in the singular, and describe the examination as the applicant's appearance in person before a qualified USCIS officer. *See* 8 C.F.R. § 335.2(a).

In view of the plain language of Section 1447(b)—as well as the interpreted meaning reflected in the governing agency regulations—Defendants' interpretation of this statutory provision must be rejected unless a literal application would conflict with legislative intent. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989). Clearly, that is not the case here. The central purpose of Section 1447(b) "was to reduce the waiting time for naturalization applicants" by addressing the problem of long backlogs moving through the naturalization process. *See United States v. Hovsepian*, 359 F.3d 1144, 1163 (9th Cir. 2004); H.R.Rep. No. 101-187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542 (1989). The plain language of Section 1447(b) allows for court intervention if USCIS fails to act within a set period of time and therefore promotes the legislative intent underlying the enactment of this statutory provision. In contrast, Defendants' interpretation of Section 1447(b) would render the 120-day time period set forth therein meaningless in any practical sense and thereby frustrate legislative intent.

Defendants argue that an "examination" cannot be "conducted" until the FBI has completed a background investigation. *See* 8 C.F.R. § 335.2(b) ("The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed."). While Defendants' argument may be of some interest to anyone inquiring whether

4

USCIS violated its own procedures—which it clearly did when it held an "initial examination" before completion of the background check—it is immaterial here where the only question is whether an "examination" was conducted. Once the "examination" is conducted—regardless of whether the background check has been completed—§ 1447(b) provides that the agency has 120 days to issue a decision before this Court can assume jurisdiction over the matter. *See, e.g., Sabir v. U.S. Citizenship and Immigration Servs.*, Civil Action No. 07-cv-00914-WYD-MJW, 2008 WL 762242, at *3 (D. Colo. March 19, 2008) (citing cases); *Al-Farisi v. Mueller*, 492 F. Supp. 2d 335, 337 (S.D.N.Y. 2007); *Lin v. Sec'y, U.S. Dep't of Homeland Sec.*, 485 F.Supp.2d 263, 265 (W.D.N.Y. 2007); *Juwale v. U.S. Citizenship and Immigration Servs.*, Civil Action No. 06-cv-01837-LTB-MJW, 2007 WL 622227 (D. Colo. Feb. 23, 2007).

I do not find the cases cited by Defendants, including *Danilov v. Aguirre*, 370 F. Supp. 2d 441 (E.D. Va. 2005), persuasive on this issue. The overwhelming majority of district courts have rejected these cases, including the Eastern District of Virginia that issued *Danilov*. *See Ahmed v. Gonzales*, 509 F. Supp. 2d 556, 559 (E.D. Va. 2007) (holding the "more persuasive" view is that proffered by "the vast majority of district courts addressing the issue [that] have held the 'examination' refers to the discrete event of the USCIS interview") (citing cases).

Plaintiffs appeared for examination before USCIS on October 22, 2004, and December 9, 2005, respectively. The 120-day period has long since run. Based on the foregoing, I conclude that this Court has jurisdiction over this matter pursuant to 8 U.S.C. § 1447(b). Since Section 1447(b) applies, I need not address the arguments that the Court lacks jurisdiction under the mandamus statute or other grounds alleged in the Complaint.

I now turn to what action should be taken by this Court in exercise of its jurisdiction.

Plaintiffs are generally agreeable to remanding this matter to USCIS provided the Court set reasonable and firm deadlines for the processing of their applications. While I note that—because the 120-day time frame in Section 1447(b) has run—I have the authority to have a hearing on Plaintiffs' applications and rule *de novo* on whether the application for naturalization should be granted, I believe that remand to USCIS is a better alternative given the significant security concerns underlying the naturalization process and the specialized skills and resources available to USCIS for addressing these concerns.

Section 1447(b) does not provide authority for the Court to directly compel the FBI to act by a certain date. USCIS, however, has the authority to request the FBI to expedite and complete the background investigations within a specified time frame. *See Sabir*, *supra*, 2008 WL 762242, at * 4 (discussing cases); *Zhu v. Chertoff*, 525 F. Supp. 2d 1098, 1102 (W.D. Mo. 2007) (discussing cases). I find, therefore, that the best course of action at this point is to remand this case to USCIS with the direction that it affirmatively expedite this process in conjunction with the FBI. The FBI, in turn, must use its best efforts to complete the background investigation as expeditiously as possible. There is no reason why these agencies cannot fully adjudicate Plaintiffs' petitions within 90 days.

### III.  ATTORNEY FEES

Plaintiffs request attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The EAJA requires a court to award a "prevailing party" its attorney fees and other expenses incurred in a proceeding "brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *R.M. Inv. Co. v. U.S.*

*Forest Serv.*, 511 F.3d 1103, 1108–08 (10th Cir. 2007); 28 U.S.C. § 21412(d)(1)(A).  It cannot be doubted that Plaintiffs are "prevailing parties" for purposes of the EAJA, even if their naturalization petitions are ultimately unsuccessful.  *See, e.g., Rueda-Menicucci v. Immigration and Naturalization Serv.*, 132 F.3d 493, 495 (9th Cir. 1997) (holding a remand from the district court to INS conferred "prevailing party" status on the plaintiff, even though the court's order did not require INS to approve the application); *Salem v. U.S. Immigration and Naturalization Serv.*, 122 F. Supp. 2d 980, 984 (C.D. Ill. 2000) (same); *see also Kopunec v. Nelson*, 801 F.2d 1226, 1229 (10th Cir. 1986).

The test for substantial justification is reasonableness in law and fact.  *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007).  Any irresponsible or unreasonable agency action in the course of a litigation—including pursuing a frivolous motion to dismiss—is sufficient to find the Government's position lacked substantial justification.  *See id*. at 1173–74.

Every Judge of the United States District Court for the District of Colorado that has considered the arguments proffered by Defendants' here—comprising at least thirteen separate rulings—has ruled in favor of the various plaintiffs.  The very same Assistant United States Attorney who signed the present Motion, Kevin T. Traskos, previously advanced—and lost—identical arguments before me in *Juwale*, *supra*, 2007 WL 622227, barely one year ago.  Defendants cite no new authority that would alter the outcomes of these prior cases.  It would be unreasonable, therefore, for the Government to believe its litigating position in this motion to be meritorious.  *See Koch v. U.S. Dep't of Interior*, 47 F.3d 1015, 1021 (10th Cir. 1995) (holding a string of losses is indicative of whether the Government's position is substantially justified).  Accordingly, I conclude the Government's position was not substantially justified.

7

I likewise conclude there are no special circumstances that would make an award of fees unjust in this case. While I am aware of the significant administrative burdens that heightened security concerns have placed on federal agencies—such as USCIS and the FBI—in the wake of September, 11, 2001, it cannot be avoided that this a mess of USCIS's own making. USCIS could have avoided the present problem entirely by following its own regulations and postponing the initial examinations of Plaintiffs until after the FBI had processed the background checks.

This does not end the inquiry, however, as the EAJA does not allow an award under Section 2412(d)(1)(A) to individuals with a net worth of over $2 million. *See* 28 U.S.C. § 2412(d)(2)(B). As there is no basis in the record upon which I may make a factual finding as to either plaintiff's net worth, I invite the Government to stipulate to this fact within 20 days of this Order. If the Government is not willing to so stipulate, I will set this matter for hearing regarding this narrow factual issue, with the caveat that failure to stipulate—if, in fact, Plaintiffs' net worth does not exceed $2 million each—may subject the Government to any additional fees spent litigating the fee issue. *See generally Comm'r, Immigration and Naturalization Serv. v. Jean*, 496 U.S. 154 (1990) (holding that an award of attorney fees under the EAJA includes an award of attorney fees incurred in fee litigation, even if the Government's position in fee litigation is substantially justified).

## IV.  CONCLUSION

Accordingly, it is ORDERED that Defendants' Motion to Dismiss [**Docket #5**] is DENIED. It is FURTHER ORDERED that:

1. This case is REMANDED to the United States Citizenship and Immigration Service with instructions to take every action at its disposal to affirmatively expedite the

processing of Plaintiffs' applications in conjunction with the Federal Bureau of Investigation;

2. The Federal Bureau of Investigation is ORDERED to use its best efforts to complete the background investigations in the most expeditious manner at its disposal;

3. Until the results of the background investigations are received by the United States Citizenship and Immigration Service and Plaintiffs' applications have been adjudicated, Defendants are ORDERED to file status reports every 20 days as to the status of—and Defendants' efforts to obtain—the results of the background investigations, including correspondence and any other relevant documents;

4. Once the United States Citizenship and Immigration Service receives the completed background investigation reports, the United States Citizenship and Immigration Service is ORDERED to make a decision on Plaintiffs' naturalization applications as expeditiously as possible, but in any event no later than thirty days after receipt of the background investigation reports;

5. The United States Citizenship and Immigration Service is FURTHER ORDERED to notify this Court as soon as a determination has been made on Plaintiffs' naturalization applications; and

6. Plaintiffs' motion for attorney fees is GRANTED, subject to a stipulation from the Government or factual finding that Plaintiffs' net worth does not exceed $2 million each. The Court will enter a separate final judgment concerning these fees and costs after Plaintiffs submit the materials described in 28 U.S.C. § 2412(d)(1)(B). Defendants may submit opposing papers within thirty days after Plaintiffs' papers are served on Defendants.

While on remand, this case will remain open so that this Court can oversee the adjudication process by the Defendants. Should a decision not be forthcoming on Plaintiffs' applications within 90 days of this Order, I will consider alternative remedies.

Dated: April  25 , 2008.

BY THE COURT:

  s/Lewis T. Babcock
Lewis T. Babcock, Judge